# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARLENE Y. SWINNEY,<br>　　　　　Plaintiff,<br>　　v.<br>NANCY A. BERRYHILL,<br>**Acting Commissioner of Social Security,**[1]<br>　　　　　Defendant. | NO. CV 16-1303 (KS)<br><br>**MEMORANDUM OPINION AND ORDER** |

## INTRODUCTION

Plaintiff Marlene Y. Swinney ("Plaintiff") filed a Complaint on February 25, 2016, seeking review of the denial of her application for Supplemental Security Income ("SSI") disability benefits. (Dkt. No 1.) On March 23 and April 5, 2016, the parties consented, pursuant to 28 U.S.C. § 636(c), to proceed before the undersigned United States Magistrate Judge. (Dkt. Nos. 13, 14.) On July 25, 2016, Defendant filed an Answer to the Complaint (Dkt. No. 17) and a Certified Administrative Record ("A.R.") (Dkt. No. 18). On October 17,

---

[1] The Court notes that Nancy A. Berryhill became the Acting Commissioner of the Social Security Administration on January 23, 2017. Accordingly, pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, the Court orders that the caption be amended to substitute Nancy A. Berryhill for Carolyn W. Colvin as the defendant in this action.

2016, the parties field a Joint Stipulation ("Joint Stip."). (Dkt. No. 19.) The Court has taken the matter under submission without oral argument.

## SUMMARY OF ADMINISTRATIVE PROCEEDINGS

Plaintiff was 51 years old on the date of her application, and, thus, under Social Security agency guidelines, an individual "closely approaching advanced age." (A.R. 19, 44; see 20 CFR § 416.963.) Plaintiff alleged disability due to anemia, eating disorder, anxiety, depression, menstrual problems and colles fracture. (A.R.44.) Plaintiff filed an application for SSI on June 6, 2012, alleging disability beginning March 23, 2012. (A.R. 10, 44.) Her application was initially denied on August 9, 2012. (A.R. 72-76.) On October 10, 2012, Plaintiff filed a Request for Reconsideration. (A.R. 78.) On March 14, 2013, her claim was again denied on reconsideration. (A.R. 79-84.) On April 16, 2013, Plaintiff submitted a written request for a hearing before an Administrative Law Judge ("ALJ"). (A.R. 85.) On April 28, 2014, Plaintiff, represented by counsel, testified before ALJ John Moreen. (A.R. 26-43.) Jane Haile, an impartial vocational expert ("VE"), also testified at the hearing. (A.R. 40-43.) On July 25, 2014, the ALJ denied Plaintiff's claim, concluding that Plaintiff had not been under a disability within the meaning of the Social Security Act since June 6, 2012. (A.R. 10-21.) Plaintiff requested review of the ALJ's decision by the Social Security Appeals Council, which denied review on January 29, 2016. (A.R. 1-4.) Plaintiff then timely commenced this civil action.

## SUMMARY OF ADMINISTRATIVE DECISION

Applying the five step sequential evaluation process outlined in 20 C.F.R § 416.920(a), at step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since October 5, 2012, the date of her application. (A.R. 12.)

At step two, the ALJ determined Plaintiff has the following severe impairments: "history of internally fixed fracture of the humeral head of the right shoulder with incomplete solid bony fusion of the fragments; . . . left shoulder fracture in January 2014; back pain consistent with sciatica; . . . mood disorder; generalized anxiety disorder; and substance-induced psychotic disorder. " (A.R. 12.)[2]

In the third step, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed in 20 CFR Part 404, Subpart P, Appendix 1. (A.R. 13.) The ALJ then determined that Plaintiff has the residual functional capacity ("RFC")

> to lift twenty pounds occasionally and ten pounds frequently. She can stand and walk, with normal breaks, for a total of six hours in an eight-hour workday, and she can sit, with normal breaks, for a total of six hours in an eight-hour workday. She can occasionally climb ladders, ropes, and scaffolds and occasionally crawl. She can frequently perform all other postural activities. In the mental realm, [Plaintiff] can understand and remember simple instructions, she can have brief, superficial interactions with the general public, and she can adapt to minor changes in the work setting.

(A.R. 14.) Plaintiff had no past relevant work. (A.R. 19.)

At step four, the ALJ determined, after considering Plaintiff's age, education, work experience and RFC, there "are jobs that exist in significant numbers in the national economy

---

[2] The ALJ noted that although the consultative psychiatric examiner had assessed Plaintiff with psychotic disorder after a psychiatric hold in April 2011, the diagnosis was later described a mood disorder, not otherwise specified and generalized anxiety disorder, and rule out substance-induced mood disorder. (A.R. 13.) The ALJ also noted that during the 2011 psychiatric hold, Plaintiff stated that she drank one to two beers daily and had just begun taking medications for about a week. (*Id*.) She also admitted to longtime cocaine and marijuana use. (*Id*.) On that basis, the ALJ concluded that "the objective record does not establish psychotic disorder without the use of substances." (*Id*.)

3

that Plaintiff can perform. (A.R. 20.) Specifically, the VE testified that Plaintiff could perform jobs at the light, unskilled level with a Specific Vocational Preparation ("SVP") of two, including Housekeeping Cleaner (DOT[3] 323.687-014), Small Products Assembler (DOT 739.687-030), and Marker (DOT 920.687-126). (*Id.*)

Based on the testimony of the VE, at step five, the ALJ concluded that Plaintiff is able to do other work considering her RFC, age, education and work experience, and as a result, Plaintiff has not been under a disability since June 6, 2012. (A.R. 21.)

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether it is free from legal error and supported by substantial evidence in the record as a whole. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 522-23 (9th Cir. 2014) (internal citations omitted). "Even when the evidence is susceptible to more than one rational interpretation, we must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012).

Although this Court cannot substitute its discretion for the Commissioner's, the Court must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (internal quotation marks and citation omitted); *Desrosiers v. Sec'y of Health & Hum. Servs.*, 846 F.2d 573, 576 (9th Cir. 1988). "The ALJ is

---

[3] "DOT" refers to *Dictionary of Occupational Titles*, Sixth Edition Revised (U.S. Department of Labor, 1991).

4

responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The Court will uphold the Commissioner's decision when the evidence is susceptible to more than one rational interpretation. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). However, the Court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." *Orn*, 495 F.3d at 630; *see also Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003). The Court will not reverse the Commissioner's decision if it is based on harmless error, which exists if the error is "'inconsequential to the ultimate nondisability determination,' or if despite the legal error, 'the agency's path may reasonably be discerned.'" *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) (internal citations omitted).

## DISCUSSION

**I.     Disputed Issues**

Plaintiff raises the following four issues,
(1) The ALJ did not properly consider the treating physician's opinion;
(2) The ALJ did not properly consider the consultative examiner's opinion;
(3) Whether the ALJ fully and fairly developed the record; and
(4) Whether the ALJ provided a complete and proper assessment of Plaintiff's RFC and posed a complete hypothetical to the VE.

(Joint Stip. at 2.)

For the reasons discussed below, the Court concludes that this matter must be remanded for further administrative proceedings.
//

## II. The ALJ Properly Considered the Treating Physician's Opinion

Plaintiff argues that the ALJ improperly rejected treating physician and orthopedic surgeon Dr. Geno Nersissian's opinions. (Joint Stip. at 3-7.) Dr. Nersissian wrote two letters on Plaintiff's behalf. In the first letter, a 2-paragraph communication dated January 30, 2014, Dr. Nersissian states that Plaintiff "suffers from a fracture of the left shoulder, secondary osteoarthritis of the right shoulder and radiculitis affecting the right leg." (A.R. 457.) He further opined that Plaintiff "requires 24 hour care, 7 days a week by her friends and relatives." (*Id.*) In a second similarly brief letter, dated April 10, 2014, Dr. Nersissian wrote that "[c]urrently Ms. Swinney is totally disabled and she is not allowed to move her left shoulder for any reason." (A.R. 523.) Dr. Nersissian also states, "At present she has an appointment in 2 weeks for evaluation and treatment." (*Id.*) The ALJ gave Dr. Nersissian's opinions "no significant weight." (A.R. 15.)

Defendant responds that while the opinions of a treating physician are generally afforded substantial weight, here, the ALJ properly discounted Dr. Nersissian's opinions because they are "inconsistent with the objective treatment record" and his "assessment is brief and conclusory." (A.R. 15.) Moreover, the ALJ noted—and Plaintiff does not dispute— that the record contains no treating records whatsoever from Dr. Nersissian. (A.R. 15; and *see* Joint Stip at 5-6 ("the record is entirely devoid of any treatment records from Dr. Nersissian."). Defendant also points out that Dr. Nersissian rendered an opinion as to ultimate disability, a determination that is reserved to the Commissioner. (Joint Stip. at 6.)

### A. Legal Standard for Evaluating a Treating Physician's Opinions

A treating physician's opinions are generally entitled to "substantial weight." *Bray v Comm'r of Soc. Sec. Admin*, 554 F.3d 1219, 1228 (9th Cir. 2009) (citing *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988)). The ALJ must articulate a "substantive basis" for

6

rejecting a medical opinion or crediting one medical opinion over another. *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014). In particular, the ALJ must provide "clear and convincing" reasons for rejecting an uncontradicted opinion of an examining physician. *Lester v. Chater,* 81 F.3d 821, 830 (9th Cir. 1995). Even when a treating physician's opinion is contradicted by evidence in the record, in order to disregard the treating physician's opinion, the ALJ must present "specific and legitimate reasons" supported by substantial evidence in the record. *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983).

The ALJ need not accept a treating physician's opinion if it is "brief, conclusory, and inadequately supported by clinical findings" or "by the record as a whole." *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004). "Items in the record that may not support the physician's opinions include clinical findings from examinations, conflicting medical opinions, conflicting physician's treatment notes and the claimant's daily activities." *Bayliss v. Barnhart* 427 F.3d 1211 (9th Cir.2005).

### B. The ALJ Did Not Err in Discounting Dr. Nersissian's Opinions

The ALJ provided specific and legitimate reasons well supported by the record for rejecting Dr. Nersissian's opinions. Although Dr. Nersissian opined that Plaintiff "requires 24 hour care, 7 days a week by her friends and relatives," this extreme level of limitation is contradicted by other evidence in the record, including Plaintiff's own testimony about her daily activities. Specifically, the results of a 2012 comprehensive internal medicine evaluation performed by consultative examining physician Dr. Nahel Al Bouz, showed that Plaintiff has physical limitations particularly with respect to her right shoulder that was fractured in 2009, but nowhere does Dr. Bouz's detailed report suggest that Plaintiff requires round-the-clock care as a result of her shoulder pain and/or sciatica. (*See* A.R. 363-68.) The ALJ noted that Dr. Nersissian opined regarding the extent and severity of Plaintiff's impairments without providing any supporting clinical findings or treatment records

7

whatsoever. (A.R. 15.)[4] The ALJ also explained that he gave Dr. Nersissian's opinions little weight because the opinions were "brief and conclusory in form." (*Id.*) In fact, the two letters that Dr. Nersissian wrote on Plaintiff's behalf are both no more than two short paragraphs and do not contain or refer to any clinical findings, testing, or evaluation. (*See* A.R. 457, 523.)

The ALJ also explained that Dr. Nersissian's opinions appeared to rely on Plaintiff's own allegations and because the ALJ found Plaintiff not fully credible, the ALJ discounted "the treating doctor's assessment as founded on unreliable claims." (*Id.*) (A.R. 16.) Notably, Plaintiff does not challenge the ALJ's credibility determination. (*See* Joint Stip. at 10.) The ALJ also explained that "Dr. Nersissian's limitations seem to exceed even those expressed by [Plaintiff]." (*Id.*) On that basis, the ALJ concluded that Dr. Nersissian appeared to be "advocating for [Plaintiff] to receive benefits rather than simply treating here." (*Id.*) Plaintiff testified that she lives alone in a rented room with a shared kitchen and bathroom. (A.R. 30.) She can bathe herself and prepares "TV dinners and sandwiches." (A.R. 36, 177.) On her Function Report, Plaintiff stated that she needs assistance with household chores and carrying laundry, but she goes to the grocery store twice a week for 15 minutes. (A.R. 179-80.) Lastly, the ALJ rejected Dr. Nersissian's opinion that Plaintiff is completely disabled because this ultimate determination is reserved exclusively to the Commissioner under 20 C.R.F. § 416.927(e) and Social Security Ruling 96-5p. (A.R. 15.)

First, the ALJ did not err in discrediting Dr. Nersissian's opinion on the ultimate issue of disability. *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001) (treating physician's opinion is not binding on an ALJ with respect to the existence of an impairment or the ultimate determination of disability) (internal citation omitted). Second, the Court

---

[4] Plaintiff was represented at the ALJ hearing by the same law firm that represents her in this appeal, however, at the hearing her counsel did not offer any additional medical records as exhibits and did not ask for additional time to provide such records. (*See* A.R. 21-40.)

8

also finds no error in the ALJ evaluation of Dr. Nersissian's opinions given the absence of supporting medical documentation or clinical findings to support Dr. Nersissian's opinions and the fact that his statements regarding Plaintiff's limitations exceed even those described by Plaintiff herself. The ALJ provided specific and legitimate reasons well supported by the record for concluding that Dr. Nersissian's opinions were entitled to little weight. *Garrison*, 759 F.3d at 1012; *Hill v. Astrue*, 698 F.3d 1153, 1159-60 (9th Cir. 2012) (ALJ may reject the contradicted opinion of a treating physician if the ALJ articulates "specific and legitimate" reasons for doing so and those reasons are supported by substantial evidence in the record.)

Accordingly, the ALJ's evaluation of the treating physician's opinions is free of legal error.

**III. The ALJ Failed to Properly Consider the Consultative Examiner's Opinions**

In Issue No. 2, Plaintiff argues that the ALJ erred in giving the opinion of consultative examiner Dr. Bouz only giving partial weight. (Joint Stip. at 11-14.) Specifically, Plaintiff contends that the ALJ "implicitly reject[ed] this doctor's medical opinions without discussion." (A.R. at 13.) Defendant responds that the ALJ "properly considered Dr. Bouz's examination report in conjunction with the other evidence of record." (*Id*. at 14.) After a thorough review of the record, this Court concludes that the ALJ failed to provide specific and legitimate reasons for discounting Dr. Bouz's opinions regarding certain of Plaintiff's physical limitations.

In July 2012, Dr. Bouz conducted a complete internal medicine evaluation of Plaintiff and provided a detailed summary report of his findings. (A.R. 363-68.) Dr. Bouz did not review any prior medical records for Plaintiff and he noted that "[n]o medical records were available for review at the time of the evaluation." (*Id.* at 363.) The report states that Plaintiff suffered a right shoulder fracture in 2009; she reported sharp pain in her right

9

shoulder and "significantly decreased range of motion affecting her capability to perform her activities of daily living that are dependent on her right arm motion particularly washing her hair, combing her hair, and cooking." (*Id.*) Plaintiff also reported occasional lower back pain that sometimes "radiates to bilateral thighs." (*Id.* at 364.) Dr. Bouz reported Plaintiff's left shoulder examination as "normal." (*Id.* at 365.) He reported Plaintiff's muscle strength as 4/5 in the right upper extremities proximal and distal, while her muscle strength in her upper extremity and bilateral lower extremities was 5/5. (*Id.* at 366.) He also noted that Plaintiff "is able to walk without difficulties" and had full range of motion of her lumbar spine. (*Id.* at 367.)

In the "Functional Assessment" portion of his report, Dr. Bouz concluded that Plaintiff had the following impairments based on her physical limitations: pushing, pulling, lifting, and carrying 20 pounds occasionally and 10 pounds frequently due to her right shoulder fracture and hardware and sciatica; no restrictions in walking or standing; no sitting restrictions; and postural limitations such as bending, kneeling, stopping, crawling, and crouching limited to frequent due to Plaintiff's sciatica. (*Id.*) The consultative examiner's report identified no limitations in Plaintiff's use of her left hand, but for her right hand use, Dr. Bouz concluded "there is limitation of the right arm overhead movement to occasional due to her limited range of motion." (*Id.* at 368.) As a result, Dr. Bouz limited Plaintiff to a reduced range of light work. (*Id.* at 367.) The ALJ gave Dr. Bouz's medical opinion only partial weight. (A.R. 15.)

The opinion of an examining doctor "can be rejected only for specific and legitimate reasons that are supported by substantial evidence in the record." *Murray*, 722 F.2d at 502. Here, the ALJ found Dr. Bouz's functional limitation to "a reduced range of light work" for Plaintiff was consistent with the ALJ's RFC determination. (A.R. 15.) However, the ALJ discounted Dr. Bouz's finding that Plaintiff should avoid unprotected heights due to her sciatica and the limitation of her overhead movement to occasional because of the limited

10

range of motion in her right shoulder, explaining that he did not "find any environmental or manipulative limitations are warranted by the objective record, which contains minimal treatment for the [Plaintiff's] right shoulder after her initial injury." (*Id*.)

However, as Plaintiff points out, the ALJ discounted this portion of Dr. Bouz's opinions and overlooked without explanation, that Dr. Bouz noted decreased range of motion in Plaintiff's right shoulder. (S*ee* Joint Stip. at 13; A.R. 363.) Dr. Bouz's finding is supported by other evidence in the record, including office visit notes in 2012 and 2013 by nurse practitioner Monique Van Aken Whye that indicate that Plaintiff had "abduction to 70 degrees at max" for her right shoulder. (A.R. 474 (2013), 478 (2012).)[5] An X-ray report provided by Dr. Carl H. Boatright in 2012, showed

> an old internally fixed fracture seen through the humeral head and the fracture fragments appear noncompletely fused. There is a loose body seen over the inferior aspect of the fracture site. Two of the uppermost screws appear to extend outside of the bone fragment into the joint space.

(A.R. 369.) In addition, 2011 medical notes from Dr. Douglas Hopper, indicate that Plaintiff has a "frozen right shoulder," which is consistent with Dr. Bouz's observations. (A.R. 491).

Defendant argues that "the ALJ discussed Dr. Bouz's examination report in detail." (Joint Stip. at 14.) And it is true that the ALJ gave Dr. Bouz's opinions significant weight in most other respects. (*See* A.R. 14-15.) But other than saying that Plaintiff appears to have received minimal treatment for her right shoulder after the initial injury and surgery, the ALJ fails to explain why he disregarded Dr. Bouz's opinions regarding the limitations imposed by

---

[5] "Abduction" refers to "movement of the limbs toward the lateral plane or away from the body." *See* Medical Dictionary, available at http://medical-dictionary.com. Full vertical abduction of the shoulder from neutral position (*i.e.*, next to the body) would be 180 degrees.

11

the limited range of motion in Plaintiff's right shoulder. In light of the record evidence supporting Dr. Bouz's functional limitation based on Plaintiff's limited range of motion in her right shoulder, the ALJ's explanation for discrediting this portion of Dr. Bouz's opinion is not supported by substantial record evidence.

## IV. The ALJ Failed To Properly Develop The Record

In Issue No. 3, Plaintiff argues that the ALJ failed to fully and fairly develop the record. (Joint Stip. at 15-16.) Defendant responds that Plaintiff "attempts to shirk her burden of proof by contending that the ALJ should have re-contacted Dr. Nersissian on her behalf." (A.R. at 16.)

"A claimant bears the burden of proving that she is disabled." *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). Even so, an ALJ has "a special "duty to fully and fairly develop the record and to assure that the claimant's interests are considered." *Brown v. Heckler,* 713, F.2d 441, 443 (9th Cir. 1983); and *see Tonapetyan,* 242 F.3d at 1150 (citing *Smolen v. Chater* 80 F.3d 1273, 1288 (9th Cir. 1996)). This duty extends to both represented and unrepresented claimants alike. *Brown,* 713 F.2d at 443. The ALJ has a duty to contact a physician if he needs to know the basis of the doctor's opinion. *Smolen,* 80 F.3d at 1299; *see also* 20 C.F.R. §§ 404.1512(e)[6], 416.912(e); and *see Thomas v. Barnhart*, 278 F.3d 957, 958 (9th Cir. 2002). An ALJ can fulfill his statutory duty by subpoenaing the claimant's physician, submitting questions to the claimant's physician, continuing the hearing, or keeping the record open after the hearing to allow supplementation of the record. *See, e.g.*, *Tidwell v. Apfel,* 161 F.3d 599, 602 (9th Cir. 1998).

//
//

---

[6] Section 404.1512 (e) of the Agency regulations provides that "Generally we will not request a consultative examination until we have made every reasonable effort to obtain evidence from your own medical sources."

12

In this case, the ALJ took none of these steps to fulfill his duty to fully develop the record, even after noting that the record contained no records from Plaintiff's treating orthopedic surgeon. (A.R. 15.) In rejecting the opinions of Dr. Nersissian, the ALJ relied heavily on the fact that the record contained no treating records or specific clinical findings from Plaintiff's primary treating orthopedic surgeon. (*See* A.R. 15-16.) Yet, at the hearing, the Court did not question Plaintiff's counsel about providing the missing records or inquire whether the record should remain open so that such records could be obtained.

Accordingly, the ALJ committed reversible error in failing to develop the record fully and fairly with respect to Plaintiff's physical impairments and the decision must be remanded for further administrative proceedings.

## V. The ALJ's RFC Assessment

In Issue No. 4, Plaintiff challenges whether the ALJ provided a complete and proper assessment of Plaintiff's RFC and whether the ALJ posed a complete hypothetical question to the vocational expert. (Joint Stip. at 18-20.) Defendant responds that the ALJ's hypothetical to the VE accurately reflected Plaintiff's vocational profile and the ALJ's RFC finding. (*Id.* at 20.) Because the Court finds that this matter must be remanded to correct the error in weighing Dr. Bouz's functional limitations and for the ALJ to fairly and fully develop the record with respect to Dr. Nersissian's treating records, the Court declines to reach the RFC and VE issues at this time.

## CONCLUSION

For the reasons stated above, IT IS ORDERED that the decision of the Commissioner is REMANDED for further administrative proceedings.

IT IS FURTHER ORDERED that the Clerk of the Court shall serve copies of this Memorandum Opinion and Order and the Judgment on counsel for Plaintiffs and for Defendant.

LET JUDGEMENT BE ENTERED ACCORDINGLY.

February 2, 2017

_____
KAREN L. STEVENSON
UNITED STATES MAGISTRATE JUDGE